**FILED**
**Sep 10, 2024**
**02:06 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT NASHVILLE

| | | |
|---|---|---|
| **FLORA PARDUE,** | ) | **Docket No. 2023-06-7875** |
| **Employee,** | ) | |
| **v.** | ) | |
| **BRIDGESTONE METALPHA, INC.,** | ) | **State File No. 46181-2023** |
| **Employer,** | ) | |
| **and** | ) | |
| **MITSUI MARINE AND FIRE INS.** | ) | |
| **CO. OF AMERICA,** | ) | |
| **Carrier.** | ) | **Judge Joshua Davis Baker** |

---

## EXPEDITED HEARING ORDER

---

At an August 8, 2024 expedited hearing, Ms. Pardue requested medical benefits and payment for out-of-pocket expenses from left-shoulder treatment. Bridgestone opposed the request, arguing she failed to show she suffered an accident arising from her employment. The Court agrees and denies her request for benefits at this time.

### Claim History

In 2020, Ms. Pardue, a long-time Bridgestone employee, suffered a workplace injury. She treated with Dr. Peter Silkowski, who diagnosed a neck strain, and with Dr. Keith Starkweather, who diagnosed right-sided carpal tunnel syndrome. After treatment, she settled her carpal tunnel claim with a 1% permanent impairment and retained the right to reasonable and medically-necessary treatment from Dr. Starkweather for that condition.

When asked about the 2020 injury at the hearing, Ms. Pardue said she first knew she had a problem with her left shoulder in 2020 but worked through it and did not seek treatment through workers' compensation. The settlement from her 2020 claim does not include her left shoulder.

Travelers was the insurance carrier for Bridgestone when the 2020 injury occurred, but Bridgestone switched insurers to Mitsui before the remaining events occurred.

1

Skipping forward several years to March 8, 2023, Ms. Pardue went to the emergency room with chest pain. The treatment notes state that she fell three days earlier, hurt her left shoulder, and feared a seizure may have caused her fall. She was released with instructions to follow up with an orthopedic doctor. The notes do not mention that she fell at work, but Ms. Pardue testified that she did.

After going to the emergency room, Ms. Pardue saw Dr. Christopher Jones, who diagnosed a left-shoulder rotator cuff tear. He wrote that Ms. Pardue had been suffering from shoulder pain for three months before he saw her. At his direction, she went for a left-shoulder arthrogram. The arthrogram note stated she had left-shoulder pain going back two years. After the arthrogram and an MRI, she returned to Dr. Jones, who recommended surgery and immobilized her shoulder with a sling.

Shortly after seeing Dr. Jones, Ms. Pardue went back to see Dr. Starkweather for her 2020 injury, complaining of left-shoulder and neck pain. Dr. Starkweather wrote the following note from that May 4, 2023 visit:

**SUBJECTIVE:
  Flora Presents today for her left shoulder and neck pain. This is been an ongoing problem for her on that she's just been kind of dealing with and has been able to work with this at Bridgestone but it's just progressively getting more more painful. She was seen in the emergency room at skyline and an MRI was obtained on April 14, 2023 this showed severe rotator cuff tendinosis and a large high-grade partial articular sided tear involving the mid and distal supraspinous tendon and a moderate full-thickness tear involving the proximal supraspinatus tendon. I will do these images and I agree with the findings. This is not a new injury for her this is been developing over time and this is just become a chronic problem slowly progressive. We've discussed the fact that this is going to be under a different Worker's Comp. insurer because of this and they just needed minor determination as to the chronicity of the injury. So I made my recommendations at this is a long-standing developing problem and not a new issue and I'll return her to work full duty without restriction as she's able to do that now and wants to do her job but at the same time I will

Dr. Starkweather recommended left-shoulder rotator cuff repair at a follow up visit two weeks later.

Meanwhile, Ms. Pardue continued working for Bridgestone as a lab technician. Her job required her to retrieve thread-like sections of steel used in making radial tires from the production line for testing to ensure their quality. The wires were coiled in a circle, and she slung them over her shoulder to carry them to the testing area. Although each wire sample weighed little, she testified that her job often required her to carry many samples at a time and their cumulative weight was up to 20 pounds.

On June 28, Ms. Pardue visited Bridgestone's onsite clinic and filled out an injury form, where she summarized her symptoms as increased discomfort in her right shoulder because of overuse due to problems with her left shoulder. She described difficulty and discomfort when taking wire samples from an overhead hook and when placing them in the test tube.

Ms. Pardue did not mention a workplace fall on the form but said at the hearing that she did fall down. Morgan McIntosh, a nurse at the clinic, signed the injury form and testified that Ms. Pardue never told her she fell. Ms. Pardue agreed she never reported the fall because she was embarrassed. She also testified that although she already needed left-shoulder surgery before the fall, the condition of her left shoulder "was a new injury" and felt "different."

On June 29, 2023, the day after she reported shoulder pain at work, Ms. Pardue returned to Dr. Starkweather. Dr. Starkweather reiterated that her left-shoulder condition was chronic and needed surgery, but he wrote he would "wait to have Workers' Comp. decide who they think is responsible for this."[1] Dr. Starkweather also completed an opinion letter, drafted by Ms. Pardue, where he answered yes when asked whether the "conditions" of her "shoulder" were "more than 50% due" to her 26 years of work at Bridgestone.

On August 3, Ms. Pardue again had shoulder pain while taking wire samples at work. This time, the pain started while she was cutting and straightening wire. She went to the onsite clinic and completed another incident form. She wrote that the pain went from her left shoulder down to her thumb, which "locked up" for several minutes while she was in her car. The form states her supervisor was also informed about this visit to the onsite clinic.

At the hearing Ms. Pardue said she requested medical treatment for her shoulder but did not receive it. Similarly, but not exactly, her affidavit states she received some treatment after requesting it, but then her claim was denied. All witnesses for Bridgestone denied that she requested medical treatment.

According to Ms. Pardue, she became tired of waiting and was in pain. So on November 7, 2023, she filed a petition for benefit determination, which contained the following description of her injury:

> Grabbing samples off a hook that's above my head off the end of each [p]roduction line that is over my head causing strain on my shoulders. I've been doing this off and on for 26 years but I've done this job daily 5 days a week for the past 7 years. My right shoulder is now straining.

---

[1] Dr. Starkwater also diagnosed a complete tear of her right rotator cuff.

On November 15, 2023, a little over a week after filing her petition, Ms. Pardue returned to Dr. Jones and described a "3 month history of shoulder pain." He recommended surgery and said that "her shoulder injury is over 51% related to her work related injury."[2] She had surgery a month later and started physical therapy, but the therapy was limited because of a dispute over her workers' compensation claim.

In April 2024, Dr. Jones completed a causation letter, where he stated that Ms. Pardue's left-shoulder injury was more than 50% related to her work. He said she needed additional physical therapy. Although none of Dr. Jones's medical notes mentioned Ms. Pardue falling at work, he wrote in his response to the causation letter that Ms. Pardue had "tripped on some tracks at work," and this fall resulted in her needing an MRI.

At the hearing, Ms. Pardue testified that she fell at work three times. She claimed one of the falls occurred at work in March 2023. Bridgestone's counsel vigorously cross-examined her about the alleged fall, but her testimony remained steadfast. Despite her testimony, Ms. Pardue did not visit the onsite clinic near the date of this fall, as she had the two other times she claimed a fall at work.

Bridgestone both denied that she ever asked for treatment and that a work-related injury occurred. In doing so, Bridgestone argued that the reports and documentary evidence do not support she fell at work, and even if she did, no proof shows the fall caused her left-shoulder injury.

Bridgestone also relied on Ms. McIntosh's testimony. She testified that when she learns of a workplace injury, she asks the employee if they want a panel of doctors. Ms. McIntosh saw Ms. Pardue twice when she came to the clinic complaining of shoulder pain. She did not remember Ms. Pardue telling her that she fell at work at either visit.

Bridgestone also argued that Ms. Pardue has filed a claim for an acute injury, so the Court cannot find her injury was a gradual one. It based the argument on Ms. Pardue's testimony that she fell at work several times yet never reported it. Bridgestone argued it was the alleged falls that caused her injury and casts doubt on the truthfulness of her testimony that she fell at work three times.

---

[2] Tennessee Code Annotated section 50-6-102(12)(C) only requires that "the injury contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes."

**Factual Findings and Conclusions of Law**

Ms. Pardue seeks benefits for her left-shoulder injury. To receive those benefits, she must prove she would likely prevail at a final hearing. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). The Court holds she is unlikely to succeed at a final hearing and denies her request.

Ms. Pardue presented two doctors' opinions causally relating her shoulder injury to her workplace accident. These opinions both meet the statutory requirement of Tennessee Code Annotated section 50-6-102(12)(C) (2023), as both state her left-shoulder injury was more than 50% caused by her work for Bridgestone. The problem is the context of their opinions when considered with Ms. Pardue's testimony.

Dr. Starkweather described Ms. Pardue's shoulder condition as a years' old "ongoing problem" that she simply worked through. He affirmed this opinion in a medical questionnaire, where he agreed her shoulder condition resulted from working at Bridgestone for 26 years.

Meanwhile, Dr. Jones's treatment notes from the initial visit in March 2023, just after her alleged fall at work, state Ms. Pardue had shoulder problems for three months before he saw her. He prescribed an arthrogram, and the report from that test states that Ms. Pardue's shoulder problems had been ongoing for two years. Further confusing matters, his response to a questionnaire suggested her need for an MRI resulted from a workplace fall, while his medical notes mention nothing about a fall at work.

For her part, Ms. Pardue's testimony about her injury waffled. In her petition, she attributed her shoulder injury to her work at Bridgestone over many years. She then testified at the trial that her shoulder had been painful since she settled her 2020 workers' compensation claim, but she never complained about it. This begs the question of whether her left-shoulder condition was already present when she settled that claim.

Ms. Pardue further testified that she fell at work three times but reported none of these falls to her employer. She claimed she did not report the falls due to embarrassment. While she may have been embarrassed, it strains belief that she failed to report any of them, especially the alleged March 2023 fall. Further, Ms. Pardue did not even visit the onsite clinic after that fall, despite an MRI showing her rotator cuff was almost completely torn around the time of that incident. Finally, the testimony from every Bridgestone witness denied that Ms. Pardue reported she fell at work.

As stated before, the Court has opinions from two doctors relating her shoulder condition to her work. The Court is mindful that Ms. Pardue does not have to prove her diagnosis, or even medical causation, to get an examination. *Hawes v. McLane Co., Inc.*, 2021 TN Wrk. Comp. App. Bd. LEXIS 30, at *9-10 (Aug. 25, 2021). However, this does

not relieve her of the duty to show she actually suffered a workplace accident resulting in an injury as defined by section 50-6-102(12)(B) or an aggravation of a preexisting condition as defined under section 50-6-102(12)(A).

In the end, the Court finds the questions are too many and the answers too few to award Ms. Pardue benefits at this time.

**IT IS ORDERED THAT**:

1. Ms. Pardue's request for medical benefits and reimbursement of costs is denied.

2. The Court sets a status hearing on **Monday, November 25, 2024, at 9:00 a.m. (CST).** The parties must call (615) 741-2113 or (855) 874-0474 to participate. Failure to call might result in determination of the issues without the party's participation.

ENTERED September 10, 2024.

_____
**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

# APPENDIX

**Exhibits:**

1) Ms. Pardue's Rule 72 declaration
2) Medical records
3) Surgery Recovery Plan dated May 22, 2023
4) Team Member Statement Form dated June 28, 2023
5) Work-related First Aid Injury/Illness Treatment Form dated August 3, 2023
6) Causation opinion of Dr. Keith Starkweather
7) FMLA application signed by Dr. Christopher Jones and dated December 15, 2023
8) Causation opinion of Dr. Christopher Jones dated April 3, 2024
9) Employee's job description
10) Photos of wire
11) Billing summary of Dr. Christopher Jones
12) Open Item Ledger document
13) Billing summary of Hughston Clinic Orthopaedics of Tennessee
14) Patient Account Summary from the Bone and Joint Group
15) Wage Statement

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on September 10, 2024.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Flora Pardue, Employee | | | X | flora72663@aol.com |
| David Drobny, Employer's Attorney | | | X | ddrobny@manierherod.com<br>smunn@manier herod.com |

_____
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
wc.courtclerk@tn.gov



<u>Right to Appeal:</u>

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1.  Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3.  You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4.  After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____ ☐ Motion Order filed on _____

☐ Compensation Order filed on_____ ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*